LEWIS & LLEWELLYN LLP
  Paul T. Llewellyn (Bar No. 216887)
  Marc R. Lewis (Bar No. 233306)
  Evangeline A.Z. Burbidge (Bar No. 266966)
505 Montgomery Street, Suite 1300
San Francisco, California 94111
Telephone: (415) 800-0590
Facsimile: (415) 390-2127
Email: pllewellyn@lewisllewellyn.com
       mlewis@lewisllewellyn.com
       eburbidge@lewisllewellyn.com

Attorneys for Plaintiff
TOP AGENT NETWORK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOP AGENT NETWORK, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>ZILLOW, INC.,<br><br>  Defendant. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>(1) **FRAUD AND DECEIT**<br>(2) **NEGLIGENT MISREPRESENTATION**<br>(3) **MISAPPROPRIATION OF TRADE SECRETS**<br>(4) **MISAPPROPRIATION OF IDEAS**<br>(5) **BREACH OF CONFIDENCE**<br>(6) **UNFAIR COMPETITION**<br>(7) **BREACH OF ORAL CONTRACT**<br>(8) **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>(9) **VIOLATION OF COMPUTER FRAUD AND ABUSE ACT**<br>(10) **VIOLATION OF COMPUTER DATA ACCESS AND FRAUD ACT**<br>(11) **PROMISSORY ESTOPPEL**<br>(12) **UNJUST ENRICHMENT**<br>(13) **DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT AND DEMAND FOR JURY TRIAL

**SUMMARY OF THE ACTION**

1. This case concerns a deliberate campaign by defendant Zillow, Inc. ("Zillow"), to steal trade secrets and other confidential and proprietary information from Top Agent Network, Inc. ("TAN").

2. TAN is a private, member-only community where the verified top 10% of real estate agents in local markets collaborate and exchange information regarding, among other things, upcoming listings, also commonly referred to as "pre-MLS" or "Coming Soon" listings.

3. Beginning in early 2014, under the guise of a potential investment by Zillow, Zillow was granted access to TAN's confidential and proprietary information as well as its business strategy and model. Among other things, this included the proprietary system developed by TAN over many years related to the presentation and dissemination of pre-MLS listings. TAN provided this information under the assurance that Zillow would keep this information confidential, and that it would be used solely for evaluating a potential investment in TAN.

4. After months of accessing TAN's confidential information under the false pretense of a potential investment, in May 2014, Zillow admitted that it never had any intention of making an investment, informing TAN that this was "just not what we do nor have ever done." Then, just four weeks later, Zillow rolled out—to great fanfare—a copycat product that incorporated confidential and proprietary information obtained from TAN.

5. This imitation product, which has been described as the "talk of the industry," was an immediate hit for Zillow. In the weeks immediately following its launch, Zillow's share price increased by over eighteen percent, and the company's market capitalization increased by over five hundred million dollars.

6. TAN brings this action against Zillow, seeking relief for Zillow's unlawful conduct in violation of federal law and the laws of California, and seeking to disgorge Zillow's ill-gotten gains.

**THE PARTIES**

7. TAN is a California corporation with its principal place of business located in San

1 Francisco, California.  TAN is a private, member-only community, where the verified top 10% of real estate agents in local markets collaborate and exchange information regarding, among other things, upcoming listings.

8. Zillow is a Washington corporation with its principal place of business located in Seattle, Washington.  Upon information and belief, Zillow operates one of the leading real estate and home-related information marketplaces on mobile networks and the internet, including the website www.zillow.com.

## JURISDICTION AND VENUE

9. This is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.  Accordingly, this Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

10. Additionally, TAN's Ninth Claim for Relief arises under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1030(g).  This Court has supplemental jurisdiction over the pendent state law claims and parties under 28 U.S.C. § 1367 because these claims are so related to TAN's actions under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Among other things, TAN is headquartered in San Francisco, California, and Zillow made misrepresentations to TAN and improperly took TAN's confidential information in San Francisco, California.  Additionally, two of Zillow's five offices are located in California, including one in San Francisco.

## INTRADISTRICT ASSIGNMENT

12. Pursuant to Civil L.R. 3-2(c) and (d), this matter is properly before the San Francisco or Oakland Division because a substantial part of the events or omissions giving rise to the claims occurred in the city and County of San Francisco, California, where TAN is headquartered and where Zillow has an office.

# FACTUAL ALLEGATIONS

## A.  General Background.

13.  Founded in Northern California in 1995, and incorporated in its present form in 2009, TAN is a private, member-only community open to the top 10% of real estate agents in local markets served by TAN.  On average, these agents make up approximately 75% of the sales in their respective geographical areas with some sources claiming it is over 90%.  Since its founding, TAN has transformed itself into a sophisticated and vibrant online community where member agents can, among other things, see, share, discuss, and retrieve pre- and non-Multiple Listing Service ("MLS") real property listings.  TAN currently has approximately 4,700 members in thirty geographic markets, and its member agents collectively represent about 660,000 homebuyers, home sellers and homeowners.  TAN member agents are responsible for the sale or purchase of approximately $15 billion in pre- and non-MLS home sales annually.

14.  Becoming a member of the prestigious TAN community requires a two-step process.  First, TAN independently verifies an agent's eligibility for membership (*i.e.*, TAN verifies that the agent qualifies as being among the top 10% by sales volume in the particular local market).  Second, after verification, the agent must agree to TAN's terms of service.  Once this process is completed, the new member agent receives a log in and password that allows the agent to access the TAN private community and the accompanying online features and content (also known as TAN's private "web application").

15.  Only qualified agents with an individual log in and password can access the TAN site and its member-only information.  Others, including agents whose sales do not qualify them for membership in TAN, as well as consumers and other members of the public, may only access TAN's public-facing website, which contains none of the exclusive content and private information found on the members-only web application.

16.  A critical aspect of TAN's success is its "Pre-MLS Listing" or "Upcoming Listings" feature.  Typically, properties listed for sale are published in the online MLS, which is available to all registered real estate agents.  A number of third-party online real estate portals also aggregate these listings for direct access by the general public.  Pre- and non-MLS listings,

3

on the other hand, cannot be gleaned from any centralized source and, at least prior to TAN, were typically shared by the listing agent, if at all, only with a hand-selected group of agents on an *ad hoc* basis (*i.e.*, through inter-office information exchanges among agents working out of the same office or brokerage, or through private, informal groups or clubs established by agents themselves).

17. The general concept of "Pre-MLS Listings" or "Upcoming Listings," (also known within the industry as "Coming Soon Listings,") is not unique to TAN. Any listing that has yet to be posted on the MLS is a "Coming Soon" listing. Such listings have always been highly coveted by agents, as agents understandably want to be in the position to offer their clients relevant listings that are not generally available through public sources. Before TAN, however, such listings were typically shared only among small groups of trusted agents. TAN was the first, and upon information and belief remains the only company to have successfully developed and implemented a system for collecting, presenting and disseminating upcoming listings that has gained widespread acceptance among agents throughout the United States.

18. TAN's particular version of Coming Soon was developed and perfected over many years. TAN's proprietary system, the strategy behind it and the particular features and tools offered to its member agents, are unique to TAN and collectively explain why TAN has succeeded where other industry players and competitors have not—namely, creating and sustaining a vibrant, authoritative community for the exchange of pre- and non-MLS properties. Other industry players have historically kept their focus on MLS and other publicly available listings. Upon information and belief, prior to Zillow's recent launch of its Coming Soon feature, the only agent-generated listings on Zillow were those that were already published in the MLS. TAN's network has never included MLS listings.

19. Given TAN's success and popularity among agents, in late 2013 and early 2014, TAN started looking for investors to assist with an expansion into additional markets. As part of those efforts, TAN spoke with several potential investors, including Zillow.

/ / /

/ / /

4

**B.     Zillow Purports To Show Interest In An Investment In TAN In Order To Gain Access To TAN's Confidential Information.**

20. In late January 2014, over email, David Faudman, TAN's Chief Executive Officer, was introduced by a mutual acquaintance to Greg Schwartz, Zillow's Chief Revenue Officer, regarding a potential investment by Zillow in TAN. Schwartz responded virtually immediately expressing interest in a discussion. Thereafter, Faudman coordinated with Jeanne Brennan, assistant to Zillow's CEO, to schedule a time for a call with Schwartz.

21. Before the call, Faudman sent Schwartz non-confidential background information on TAN. Faudman informed Schwartz that TAN was seeking an investment of $3 million to $4 million so that it could expand, adding more markets and agents to its rapidly growing community, which at the time had approximately 3,200 member agents in 30 geographically defined areas.

22. The first telephone call between Faudman and Schwartz took place on February 5, 2014. The call lasted about 20 minutes. Faudman reiterated that TAN was looking for an investor like Zillow to help TAN expand its reach and facilitate its continued growth. Schwartz, on behalf of Zillow, assured Faudman that all information provided by TAN would be kept confidential and that it would be used by Zillow solely to evaluate a potential investment. Schwartz also told Faudman that Zillow would execute a Non-Disclosure Agreement ("NDA"), but only one that was based on Zillow's form.

23. Immediately following the call, Faudman set up a login account for Schwartz. These credentials allowed Zillow to access the full features and information on TAN's private website (including the "Pre-MLS Listing" feature), a privilege otherwise reserved exclusively for TAN member agents. Schwartz acknowledged receipt of the information and asked to receive emails regarding San Francisco listings, purportedly to obtain a better sense of the TAN member experience. TAN would not have released this sensitive information to Zillow, a potential investor, without Zillow's assurances that the information provided by TAN would be kept confidential, and that this confidential and proprietary information would only be used to evaluate a potential investment in TAN.

24. The following week, Schwartz sent an email to Faudman stating that he had some questions about TAN's product and asking to schedule a call.

25. The second call between Schwartz and Faudman took place on February 19, 2014. It lasted about 25 minutes. During this call, Faudman provided Schwartz with further confidential and proprietary details about TAN, its unique features, its membership model, and its business strategy. On behalf of Zillow, Schwartz stated that he was impressed with TAN's product due, in part, to its vibrant community of agents. Schwartz noted that he was especially impressed to see that the TAN network included many listings that were not yet on the MLS. At the conclusion of the call, Faudman and Schwartz arranged for an in-person meeting in San Francisco. Again, TAN would not have disclosed this information to Zillow without Zillow's assurances that TAN's information would be kept confidential, and that this confidential and proprietary information would only be used to evaluate a potential investment in TAN.

26. After the call, Schwartz informed Faudman that he was interested in the details of TAN's business, including the number of agent subscribers, and how user engagement was viewed. He also told Faudman that he was particularly interested in pre-MLS listing volume, *i.e.* the "Coming Soon" listing volume. Despite Zillow's purported interest in an equity investment, at no time did Zillow ask for any information regarding TAN's financial condition, sales performance, results of operations or other information traditionally requested in the context of a potential equity investment.

27. On March 12, 2014, Faudman and TAN's Vice President of Software Engineering, Nadeem Bitar, met with Schwartz and Chloe Harford, Zillow's Product Manager, at Zillow's offices in San Francisco. The meeting lasted approximately an hour and a half. During this meeting, Faudman and Bitar provided further confidential and proprietary information about TAN. And once again, Zillow expressed particular interest in TAN's "pre-MLS" or "Coming Soon" feature, questioning Faudman and Bitar at length about this feature, including TAN's related business strategy in creating and sustaining a vibrant and engaged community where agents could post and view listings that had yet to appear on the MLS.

28. At the March 12, 2014 meeting, Schwartz's and Harford's questions, together

with the ensuing discussion, centered on whether a vibrant network focused on pre- and non-MLS listings was viable and, if so, what tools and features TAN felt were necessary to make that happen. At no point during this discussion did Schwartz or Harford indicate that Zillow was in the midst of creating a virtually identical product, or that it had never made an equity investment like the one TAN was seeking.

29. The following week, on March 19, 2014, Schwartz emailed Faudman. He stated that he had come away from the meeting with growing confidence in TAN, and that he would get back to Faudman the next week.

30. In the meantime, between February 2014 and May 2014, using the log-in credentials that TAN provided to them, Schwartz and his team accessed and viewed dozens of pages within TAN's private web application and opened over one hundred member post emails.

**C.    Zillow Declines To Invest In TAN While Using TAN's Confidential Information To Launch A Virtually Identical Product Just A Few Weeks Later.**

31. Despite Zillow's purported enthusiasm for TAN, Faudman did not hear from Schwartz for nearly two months. Finally, on May 13, 2014, in response to an email from Faudman, Schwartz informed Faudman that although TAN was impressive and valuable, Zillow would not be making an investment, claiming "its [sic] just not what we do nor have ever done."

32. Just one month later, on June 12, 2014, with no prior warning or notice to TAN, and to great fanfare, Zillow launched its "Coming Soon" product—a product that incorporated many of the tools, features and strategies that are the cornerstone of TAN's business and that had been disclosed to it by TAN in the course of the parties' confidential communications related to Zillow's possible investment in TAN. As Zillow announced in a press release issued on June 12, 2014, "for the first time on Zillow, home shoppers can search for and find homes that are not yet on the market, but expect to be listed for sale within 30 days." At no time during Zillow's purported due diligence on TAN did it mention or even indicate that it was considering launching its own Pre-MLS listing product.

33. The similarities between TAN's "Pre-MLS Upcoming Listing" product and

Zillow's "Coming Soon" product are striking. Zillow's product contains all of the key features of TAN's. Among other things, both present listings 30 days pre-MLS, include the date the property is expected to go on the market, indicate how many days since the listing was posted by the agent, include disclaimers to abide by all local, MLS and real estate association rules, and provide activity reports. Additionally, in a stark departure from Zillow's previous business model, and using the confidential information and strategic advice provided to Zillow by TAN, Zillow's "Coming Soon" product does not contain other agent advertising next to these listings. Instead, it contains only the listing agent's contact information, a concept championed by TAN and discussed at length with Zillow during the course of the parties' discussions.

34. The launch of Zillow's "Coming Soon" product immediately garnered a great deal of press and industry interest, to the benefit of Zillow. For example, in an article published on July 25, 2014, one prominent industry commentator stated: "Zillow's new 'Coming Soon' feature has been the talk of the industry for over a month now." Immediately following the launch of its "Coming Soon" product, Zillow's stock price increased from $120 per share on June 12, 2014 to $142 per share on June 30, 2014, *i.e.* an increase of over eighteen percent. Over the same period, Zillow's market value increased by over $500 million. Upon information and belief, this increase was due, in large part, to the launch of the "Coming Soon" product.

35. As a direct and proximate result of Zillow's wrongful conduct, including its theft and misappropriation of TAN's trade secrets and other confidential and proprietary information, TAN has suffered and continues to suffer significant harm, both financially and to its goodwill and reputation. Additionally, upon information and belief, Zillow has been unjustly enriched by its wrongful conduct at TAN's expense by tens or hundreds of millions of dollars.

36. TAN is informed and believes and therefore alleges that Zillow did not intend to, and has never intended to, evaluate a potential equity investment in TAN, and instead acted with malice, oppression and/or in reckless disregard of TAN's rights.

### FIRST CLAIM FOR RELIEF
**(Fraud and Deceit)**

37. TAN incorporates by reference the allegations contained in paragraphs 1 through

36 as though fully set forth herein.

38. As alleged above, Zillow affirmatively made fraudulent misrepresentations and false promises to TAN. Greg Schwartz, Zillow's Chief Revenue Officer, continually represented to David Faudman, TAN's Chief Executive Officer, that all information provided by TAN to Zillow would be used solely to evaluate a potential investment by Zillow and would be kept confidential. Schwartz also falsely represented that Zillow would draft and execute an NDA.

39. Zillow also made material omissions to TAN. At no time during the course of dealing between Zillow and TAN did Zillow disclose that the type of investment TAN was seeking was "not what [Zillow] do[es]" or "ha[s] ever done." Additionally, Zillow never disclosed that it was developing a competing "Pre-MLS Upcoming Listing" product.

40. Zillow's representations, promises, and omissions were material to TAN and its decision to share confidential information with Zillow, including providing Zillow with access to TAN's private web application and members-only emails, including Pre-MLS listings, a privilege reserved to TAN member agents.

41. Zillow knew that these representations and promises were false and misleading and that it was omitting material information to TAN. During the course of Zillow's five month interaction with TAN, Zillow continued to access, use, and disclose TAN's confidential information. And at no time during this five month interaction did Zillow disclose that it was working on a competing product.

42. Zillow made these misrepresentations, false promises, and omissions with the specific intent of inducing TAN to rely on them and to encourage, cause, or motivate TAN to share its confidential information with Zillow.

43. TAN justifiably relied on Zillow's misrepresentations, false promises, and omissions by sharing confidential information with Zillow continuously from January through May 2014.

44. Had TAN known that the representations and promises were false, or had it been aware of the material omissions that Zillow failed to disclose, it would not have disclosed its confidential information with Zillow, shared material with Zillow, or provided Zillow with

9

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

access to its private web application or its member-only emails.

45. As a direct and proximate result of Zillow's actions, TAN has suffered damages in an amount which will be proven at trial.

46. In doing the acts alleged herein, Zillow acted with oppression, fraud and malice, and thus TAN is entitled to punitive and exemplary damages in an amount according to proof.

**SECOND CLAIM FOR RELIEF**
**(Negligent Misrepresentation)**

47. TAN incorporates by reference the allegations contained in paragraphs 1 through 46 as though fully set forth herein.

48. Zillow made several misrepresentations to TAN regarding important facts. Among other things, Schwartz misrepresented to Faudman that all information provided by TAN to Zillow would be used solely to evaluate a potential investment by Zillow and would be kept confidential.

49. These misrepresentations were material to TAN and its decision to share confidential information with Zillow.

50. The representations made by Zillow were in fact false, and Zillow had no reasonable grounds for believing the representations were true when made.

51. On information and belief, Zillow intended TAN to rely on its misrepresentations.

52. TAN relied on Zillow's misrepresentations by sharing confidential information continuously with Zillow from January through May 2014 and by allowing Zillow access to TAN's website and by providing it with member-only emails. Had TAN known that the representations were false, TAN would have taken other actions.

53. TAN's reliance on Zillow's representations was justified and reasonable.

54. As a direct and proximate result of Zillow's actions, TAN has suffered damages in an amount which will be proven at trial.

**THIRD CLAIM FOR RELIEF**
**(Misappropriation Of Trade Secrets)**

55. TAN incorporates by reference the allegations contained in paragraphs 1 through

10

54 as though fully set forth herein.

56. At all relevant times, TAN was in possession of trade secret information as defined by California's Uniform Trade Secrets Act ("CUTSA"), California Civil Code section 3426.1(d).

57. As alleged above, TAN is a private, member-only community where member agents can, among other things, see, share, discuss, and retrieve pre- and non-MLS reports and information. The heart of TAN's business is its unique and proprietary "Upcoming Listing" feature.

58. Among other things, the manner in which this feature was developed and implemented, the strategy behind it, the operation of this feature, and the identity of which TAN member agents made listing posts on TAN's member-only web application, were trade secrets with actual or potential independent economic value because they were secret and were not commonly known nor easily discoverable by other industry players—including Zillow.

59. TAN made reasonable efforts to maintain the secrecy of this information, including by, among other things, limiting access to qualified agents who agree to TAN's terms of service and dedicating personnel and resources to screen and evaluate potential community members.

60. Zillow was authorized to access TAN's trade secret information, including its proprietary "Upcoming Listing" feature, solely for the purpose of evaluating whether or not it wanted to invest in TAN. Zillow was not authorized to access or use this information for any other purpose.

61. Despite this, Zillow deliberately and improperly used, copied, and misappropriated TAN's confidential information, including its trade secrets.

62. Zillow was aware from its discussions with TAN that the information copied, used, and otherwise misappropriated was confidential and should not have been disclosed or used for the benefit of Zillow other than to evaluate a potential equity investment.

63. TAN is informed and believes and therefore alleges that Zillow has actually misappropriated and continues to threaten to misappropriate TAN's trade secrets in violation of

11

CUTSA.

64. As a direct and proximate result of Zillow's conduct, TAN has suffered, and will continue to suffer, irreparable harm. TAN is therefore entitled to preliminary and permanent injunctions restraining and enjoining Zillow from using TAN's confidential and proprietary information.

65. As a direct and proximate result of Zillow's conduct, including its misappropriation of trade secrets, TAN has also suffered damages in an amount which will be proven at trial. Zillow has also been unjustly enriched in an amount which will be proven at trial.

66. Additionally, TAN is entitled to an award of punitive damages and attorneys' fees pursuant to CUTSA based on Zillow's willful and malicious misappropriation of TAN's trade secrets.

**FOURTH CLAIM FOR RELIEF**
**(Misappropriation of Ideas – Implied-in-Fact Contract)**

67. TAN incorporates by reference the allegations contained in paragraphs 1 through 66 as though fully set forth herein.

68. As alleged above, TAN prepared and created an online feature to allow for the growth of a limited and exclusive online community for real estate agents, wherein they could share confidential information, including information regarding pre- and non-MLS listings.

69. TAN disclosed this work product to Zillow in pursuit of an investment.

70. Zillow was fully aware that TAN was disclosing this confidential information solely for the purpose of allowing Zillow to evaluate whether it would invest in TAN. Moreover, Zillow knew that TAN expected this information to be kept confidential. Zillow voluntarily accepted the information knowing these were the conditions of disclosure. TAN would not have disclosed these ideas to Zillow had it known that Zillow had no interest in investing and would not keep the information confidential.

71. As a direct and proximate result of Zillow's actions, TAN has suffered damages in an amount which will be proven at trial. The reasonable value of TAN's work will be

ascertained and proven at trial.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Confidence – Novel Idea)**

72. TAN incorporates by reference the allegations contained in paragraphs 1 through 71 as though fully set forth herein.

73. As alleged above, TAN prepared and created one or more novel ideals regarding the creation of a limited and exclusive online community for real estate agents, wherein they could share confidential information, including information regarding pre- and non-MLS listings.

74. At all times relevant to this action, a confidential relationship existed between Zillow and TAN as prospective business partners.

75. TAN disclosed its novel ideas to Zillow in pursuit of an investment from Zillow.

76. Zillow had the opportunity to reject TAN's novel ideas, but instead chose not to, agreeing to keep these novel ideas confidential and to use them only for the purpose of evaluating an investment in TAN.

77. On information and belief, Zillow is engaged in the unauthorized use of TAN's novel ideas.

78. As a direct and proximate result of Zillow's actions, TAN has suffered damages in an amount which will be proven at trial.

79. In doing the acts alleged herein, Zillow acted with oppression, fraud and malice, and thus TAN is entitled to punitive and exemplary damages in an amount according to proof, as well as attorneys' fees.

**SIXTH CLAIM FOR RELIEF**
**(Unfair Competition, Cal. Bus & Prof. Code § 17200, et seq.)**

80. TAN incorporates by reference the allegations contained in paragraphs 1 through 79 as though fully set forth herein.

81. Zillow's wrongful acts and conduct as alleged in this complaint constitute unfair and unlawful competition under California's Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.).

13

82. Zillow's unlawful acts, omissions, misrepresentations, and practices include violations of California law and a deliberate campaign to gain access to TAN's confidential information by means of fraud and deceit. Additionally, Zillow also violated California law through its misappropriation of TAN's trade secrets, and misuse of TAN's confidential information.

83. Zillow's unlawful acts and unfair business practices threaten to cause, and will cause, great and irreparable injury to TAN. TAN is informed and believes that unless Zillow's conduct is enjoined by this Court, Zillow will continue to cause irreparable injury to TAN. TAN is therefore entitled to preliminary and permanent injunctions restraining and enjoining Zillow from using TAN's confidential and proprietary information.

84. Additionally, as a direct and proximate result of Zillow's unlawful acts and unfair business practices Zillow, on information and belief, has been unjustly enriched in an amount to be proven at trial.

85. Therefore, Zillow should be required to disgorge all profits and other benefits it may have gained as a result of its unfair and unlawful conduct.

### SEVENTH CLAIM FOR RELIEF
**(Breach of Oral Contract)**

86. TAN incorporates by reference the allegations contained in paragraphs 1 through 85 as though fully set forth herein.

87. Faudman, on behalf of TAN, and Schwartz, on behalf of Zillow, entered into an oral contract in or around late January/early February 2014. An essential term of this contract was that Zillow would keep all information provided by TAN confidential and that information would be used solely for the purpose of evaluating a potential investment in TAN.

88. TAN performed all conditions and obligations under this oral contract, except as waived, prevented, or excused by Zillow.

89. Zillow breached this oral contract with TAN by, among other things, using and sharing TAN's confidential information; using TAN's confidential information for purposes other than to evaluate a potential equity investment; and using TAN's confidential information in

1     the development of its own "Coming Soon" feature.

2     90.     These violations constitute material breaches of the contract.

3     91.     As a direct and proximate result of Zillow's breach, TAN has suffered damages in an amount which will be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

92.     TAN incorporates by reference the allegations contained in paragraphs 1 through 91 as though fully set forth herein.

93.     Like all contracts, the oral contract between TAN and Zillow contained an implied covenant of good faith and fair dealing which bound each party. This covenant imposed on Zillow the duty not to unfairly interfere with the TAN's ability to receive the benefits of the agreement, and imposed the same requirements on TAN in regard to Zillow.

94.     By engaging in the conduct described above, Zillow's acts and omissions—including its continued use of TAN's confidential information to create a competing product and its failure to disclose that it had never made the type of investment TAN was seeking—injured the rights of TAN and breached Zillow's duty to protect the reasonable expectations of TAN.

95.     As a direct and proximate result of Zillow's breach, TAN has suffered damages in an amount which will be proven at trial.

96.     Zillow's acts and omissions in breaching the implied covenant of good faith and fair dealing in the agreement constituted action taken in bad faith, which was willful, oppressive and malicious, and which justifies an award of punitive damages.

## NINTH CLAIM FOR RELIEF
### (Violation of Computer Fraud And Abuse Act, 18 U.S.C. §§ 1030(a)(2)(C), (a)(4) & (a)(5))

97.     TAN incorporates by reference the allegations contained in paragraphs 1 through 96 as though fully set forth herein.

98.     Zillow has violated the Computer Fraud And Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing a computer used for interstate or foreign commerce or communication, without authorization from TAN or by exceeding authorized access to such a

15

computer, and by obtaining information from such a protected computer.

99. Zillow has violated the CFAA, § 18 U.S.C. 1030(a)(4) by knowingly, and with intent to defraud TAN, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value, including content from the TAN web application.

100. The computer system or systems that Zillow accessed as described above constitute a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2).

101. TAN has suffered damage and loss by reason of these violations, including, without limitation, harm to TAN's web application, data, and other losses and damage in an amount to be proven at trial, and well in excess of $5,000 aggregated over a one year period.

**TENTH CLAIM FOR RELIEF**
**(Violation Of Computer Data Access And Fraud Act,**
**Cal. Penal Code § 502)**

102. TAN incorporates by reference the allegations contained in paragraphs 1 through 101 as though fully set forth herein.

103. Zillow has violated California Penal Code § 502(c)(2) by knowingly and fraudulently, and without permission, accessing, taking, copying, and making use of programs, data, and files from TAN computers, computer systems, and/or computer networks.

104. Zillow has violated California Penal Code § 502(c)(3) by knowingly, fraudulently, and without permission accessing and using TAN computer services.

105. Zillow has violated California Penal Code § 502(c)(6) by knowingly, fraudulently, and without permission providing, or assisting in providing, a means of accessing TAN's computers, computer systems, and/or computer networks.

106. Zillow has violated California Penal Code § 502(c)(7) by knowingly, fraudulently, and without permission accessing, or causing to be accessed, TAN's computers, computer systems, and/or computer networks.

107. TAN owns certain data that comprises information obtained by Zillow as alleged above.

108. As a direct and proximate result of Zillow's unlawful conduct within the meaning

of California Penal Code section 502, Zillow has caused damage to TAN in an amount to be proven at trial. TAN is also entitled to recover its reasonable attorneys' fees pursuant to California Penal Code section 502(e).

**ELEVENTH CLAIM FOR RELIEF**
**(Promissory Estoppel)**

109. TAN incorporates by reference the allegations contained in paragraphs 1 through 108 as though fully set forth herein.

110. In the alternative to its breach of contract claim, and in the event that the oral contract between the parties is found to be unenforceable, TAN asserts a claim for relief for promissory estoppel.

111. Zillow made promises to TAN by representing it would keep TAN's information confidential, it would use that information solely for the purpose of evaluating an investment in TAN, and that it would execute an NDA.

112. Zillow should have expected that TAN would rely on such promises in altering its conduct with respect to the proposed disclosure of confidential information.

113. TAN did, in fact, justifiably rely on such promises by deciding to disclose confidential information and by providing Zillow continued access to that information for numerous months.

114. As a result of Zillow's false promises and misrepresentations, TAN has suffered damages in an amount to be proven at trial.

**TWELFTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

115. TAN incorporates by reference the allegations contained in paragraphs 1 through 114 as though fully set forth herein.

116. By its wrongful acts and omissions, Zillow was unjustly enriched at the expense of and to the detriment of TAN, or while TAN was unjustly deprived.

117. TAN seeks restitution from Zillow and seeks an order from this Court disgorging all commissions, profits, benefits, and other compensation obtained by Zillow from its wrongful

17

conduct.

### THIRTEENTH CLAIM FOR RELIEF
### (Declaratory Relief)

118. TAN incorporates by reference the allegations contained in paragraphs 1 through 117 as though fully set forth herein.

119. An actual controversy has arisen and now exists between TAN and Zillow concerning Zillow's unauthorized use of TAN's confidential information in breach of numerous representations it made to TAN and in breach of its agreements with TAN.

120. In light of Zillow's wrongful conduct, as alleged herein, a declaratory judgment is necessary and proper at this time.

121. Pursuant to 28 U.S.C. § 2201, et seq., TAN requests declaratory judgment that: (i) Zillow has no right to use the confidential information obtained from TAN; (ii) Zillow owes TAN an amount to be proven at trial for its violation of various agreements and representations and for its other wrongful conduct; (iii) Zillow is enjoined from operating its "Coming Soon" platform.

### PRAYER

WHEREFORE, TAN prays for judgment against Zillow as follows:

1. An order that, by the acts complaint of herein, Zillow has:
   a. Intentionally or negligently made misrepresentations, false promises, and omissions to TAN;
   b. Misappropriated TAN's trade secrets;
   c. Misappropriated TAN's work product;
   d. Engaged in the unauthorized use of TAN's novel ideas; and
   e. Engaged in unfair competition;
   f. Materially breached its oral agreement with TAN;
   g. Breached the implied covenant of good faith and fair dealing;
   h. Violated the Computer Fraud And Abuse Act, 18 U.S.C. §§ 1030 et seq.; and
   i. Violated the Computer Data Access And Fraud Act, Cal. Penal Code § 502.

2. An order that preliminarily and permanently enjoins Zillow, and its officers,

employees, agents, and representatives, from engaging in the unlawful conduct complained of herein, including:

    a. Requiring Zillow to cease copying, using, or disclosing TAN's confidential information and to return to TAN or destroy all such information;

    b. Requiring Zillow to cease using or disclosing TAN's trade secrets;

    c. Requiring Zillow to cease operating its "Coming Soon" platform;

3. An order awarding TAN its actual, incidental, special and consequential damages, and also awarding TAN punitive damages;

4. An order awarding TAN all gains, profits, and advantages derived by Zillow from its wrongful acts and omissions;

5. An order awarding TAN's costs of suit, including reasonable attorneys' fees and experts' fees;

6. Prejudgment and post-judgment interest at the maximum rate allowed by law; and

7. For such other and further relief as the Court may deem just and proper.

Dated:  October 27, 2014

LEWIS & LLEWELLYN LLP
Paul T. Llewellyn
Marc R. Lewis
Evangeline A.Z. Burbidge

By: _____/s/_____
    Paul T. Llewellyn

## DEMAND FOR JURY TRIAL

TAN demands trial by jury on each of its claims for relief which are triable before a jury.

Dated:  October 27, 2014

LEWIS & LLEWELLYN LLP
Paul T. Llewellyn
Marc R. Lewis
Evangeline A.Z. Burbidge

By: _____/s/_____
    Paul T. Llewellyn