UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOP AGENT NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZILLOW, INC., <br><br> Defendant. | Case No. 14-cv-04769-RS <br><br> **ORDER GRANTING MOTION TO DISMISS AND DENYING REQUEST FOR JUDICIAL NOTICE** |

## I. INTRODUCTION

The parties in this matter are competitor online real estate information dissemination services. Defendant Zillow, Inc. allegedly defrauded plaintiff Top Agent Network, Inc. ("TAN") into divulging proprietary information about its "Upcoming Listings" feature, a product that organizes and disseminates information about off-market properties, and used this information in the development of its own rival feature. TAN advances thirteen claims for relief arising out of these facts, all but one of which (the seventh claim for breach of contract) are the subject of Zillow's motion to dismiss. In that TAN fails to allege with sufficient specificity the trade secret and non-trade secret proprietary information at the heart of its claims, and furthermore raises claims that are irreconcilable or duplicative, Zillow's motion is granted on all claims at issue with leave to amend.

## II. BACKGROUND[1]

TAN is a private online community and web application available to the top ten percent of real estate agents in local markets served by TAN for, among other things, discussing and disseminating information about real property for sale that does not appear on the Multiple Listing Service ("MLS") available to all registered real estate agents. Agents who wish to join TAN must undergo verification as falling among the top ten percent of real estate salespersons by sale volume in their respective geographic areas, and agree to TAN's terms of service. Only then may they receive log-in and password information permitting them to access TAN's private content, including the "Upcoming Listings" feature at issue in this case. Non-members may only access TAN's public-facing web pages, which do not include information about real property not listed on the MLS. TAN's "Upcoming Listings" feature, by contrast, allows members to share within TAN's exclusive community information about properties which have yet to appear on the MLS or will not be listed.

The "Upcoming Listings" concept, also referred to within the industry as "pre-MLS" or "Coming Soon," is not novel. Agents covet and selectively share with one another information that allows them to offer their clients listings generally unavailable through public sources. According to TAN, however, its particular strategy and system for aggregating such information is unique and took years to hone. Indeed, TAN avers it is "the only company to have successfully developed and implemented a system for collecting, presenting and disseminating upcoming listings that has gained widespread acceptance among agents throughout the United States." Compl. ¶ 17.

Zillow, Inc. operates an online real estate information marketplace. In February 2014, TAN's Chief Executive Officer David Faudman contacted Zillow's Chief Revenue Officer Greg Schwartz regarding a potential investment in TAN by Zillow. Faudman initially shared non-

---

[1] The factual background herein is based on the averments in the complaint, which must be taken as true for purposes of a motion to dismiss.

confidential background information with Schwartz via email, and then the two spoke by phone on February 5, 2014. On this call, TAN avers, Faudman conveyed TAN's interest in a company like Zillow, and Schwartz assured Faudman that "all information provided by TAN would be kept confidential and that it would be used by Zillow solely to evaluate a potential investment." Compl. ¶ 22. Schwartz further shared his intention to execute a Non-Disclosure Agreement ("NDA") on behalf of Zillow. Shortly after this first call, Faudman set up a TAN account for Schwartz, allowing him to access TAN's member-only content, including its "Upcoming Listings."

During a second phone call on February 19, 2014, Faudman explained TAN's features, membership model, and business strategy. Schwartz shared his interest in details of TAN's business, particularly the pre-MLS information. The two then arranged an in-person meeting including additional personnel from each company on March 12, 2014, at Zillow's San Francisco's offices. During this meeting, TAN's representatives shared further information about the company's business strategy for creating the online community necessary to the success of its "Upcoming Listings" feature. According to TAN, the meeting discussion centered upon the nuts and bolts of creating a viable online network focused on pre- and non-MLS listings. In a March 19, 2014 email to Faudman, Schwartz stated that the meeting imparted to him a growing confidence in TAN, and that he would follow up further the next week. It was, however, several weeks later that the parties' next communication took place. On May 13, 2014, in response to an email from Faudman, Schwartz conveyed that Zillow would not be making an investment. He wrote, "its [sic] just not what we do nor have ever done." Compl. ¶ 31.

Throughout this period from February to May, Schwartz and his team viewed dozens of pages within TAN's private web application and opened over a hundred member posts. TAN represents that it would not have shared access to its private online content or any of the aforementioned information without Zillow's assurances that the information would be used only to evaluate a potential investment in TAN, and would be kept confidential. The parties did not at any point, however, execute a NDA.

On June 12, 2014, Zillow launched its own "Upcoming Listings" product, which allows real estate shoppers to find homes that are not yet on the market but are expected to be listed for sale within thirty days. Zillow gave no prior notice to TAN regarding the launch, nor, TAN avers, did Zillow ever suggest that it was developing its own pre-MLS listing feature. According to TAN, Zillow's "Upcoming Listings" feature contains all of the core features of TAN's service. Both, for example, present listings thirty days prior to showing up on MLS, including the date a property is expected to hit the market; how many days since an agent initially posted the listing; activity reports; and, in a departure from Zillow's past approach, only the listing agent's contact information, rather than advertisements for other agents. The launch of Zillow's product was met with significant press and industry interest, followed by sharp rises in the company's stock price and market valuation. These benefits accrued to Zillow in large part, alleges TAN, due to its "Upcoming Listings" product, and have caused TAN's reputation and financial wellbeing to suffer. TAN, accordingly, filed suit on October 27, 2014, alleging a host of statutory and common-law claims.

In particular, TAN avers, Zillow committed (1) fraud and deceit; (2) negligent misrepresentation; (3) misappropriation of trade secrets under California's Uniform Trade Secrets Act ("CUTSA"); (4) misappropriation of ideas; (5) breach of confidence; (6) unfair competition under California's Unfair Competition Law ("UCL"); (7) breach of oral contract; (8) breach of the implied covenant of good faith and fair dealing; (9) violation of the federal Computer Fraud and Abuse Act ("CFAA"); (10) violation of California's Computer Data Access and Fraud Act ("CDAFA"); (11) promissory estoppel; (12) unjust enrichment; and (13) actions warranting declaratory relief. Zillow now moves to dismiss all of TAN's claims except the breach of oral contract claim for relief.

### III.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id*. at 679.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV.   DISCUSSION

A.  Zillow's Request for Judicial Notice

In support of its arguments that no trade secrets exist for Zillow to have misappropriated, and that TAN's claim under the CUTSA therefore fails, Zillow requests that judicial notice be taken of four exhibits lodged with its motion that it alleges are screenshots from past and present versions of TAN's website.  These purport to show (1) an archived webpage dated November 6, 2013, displaying TAN's terms of use (accessed December 17, 2014); (2) an archived webpage dated December 12, 2013, displaying publicly available directory of TAN member agents (accessed December 17, 2014);[2] (3) a webpage from TAN's site accessed on December 17, 2014, displaying testimonials and streaming videos explaining and promoting TAN; and (4) a webpage from TAN's site accessed on December 18, 2014, displaying videos and content explaining TAN's functionality.  Decl. of Brooke Taylor, Exs. 1-4.  Because review of these exhibits at this juncture would be inappropriate, Zillow's request must be denied.

When resolving a motion to dismiss for failure to state a claim, review is generally limited to the four corners of the complaint. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir. 1995).  The court may, however, look to exhibits attached to the complaint, *see Hal Roach Studios. Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents incorporated by reference into the complaint.  *See Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002).  Documents upon whose contents the complaint necessarily relies—even if the complaint does not explicitly allege their contents—and whose authenticity and relevance are uncontested, are considered incorporated by reference. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Knievel v. ESPN,* 393 F.3d 1068, 1076-77 (9th Cir. 2005).  The court may, in addition, take into account material that is

---

[2] The Declaration of Brooke Taylor, lodged with Zillow's motion, states without further explanation that these two exhibits were obtained via the "Wayback Machine."

properly the subject of judicial notice. *Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir. 2001). Judicial notice may be taken of a fact not subject to reasonable dispute because it either is generally known within the trial court's territorial jurisdiction, or can be readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Zillow's exhibits are neither documents on which the complaint "necessarily relies," nor are their relevance and authenticity uncontested. Exhibits 1 and 2 purport to have been displayed on TAN's website in November and December of 2013, before the parties' interactions commenced. It is thus unclear whether the terms of use delineated in Exhibit 1 were in effect at times relevant to TAN's claims. In addition, even if Exhibit 2—which appears to display a list of hyperlinked geographic areas, each leading to a directory of local TAN agents—were appropriate for review at this juncture, it does little to address TAN's contention that information about which agents posted particular listings constitutes a trade secret. The contents of Exhibits 3 and 4 are likewise not "necessarily relied upon" by the complaint. That TAN may publicly promote aspects of its private content does not, without more, inevitably lead to the conclusion that it had no trade secrets to share with Zillow. While Zillow may, of course, file a motion for summary judgment if the facts it attempts to demonstrate here prove undisputed, its request for judicial notice is denied.

B. California Uniform Trade Secrets Act (Claim 3)

CUTSA provides for the civil recovery of actual losses or other injuries caused by the misappropriation of a "trade secret." Cal. Civ. Code §§ 3426-3426.1. "Misappropriation" means improper acquisition, or non-consensual disclosure or use of another's trade secret. *Id.* § 3426.1(b). "Trade secrets" encompass (1) information, including a formula, pattern, compilation, program, device, method, technique, or process, that (2) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who could obtain economic value from its disclosure or use; and (3) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ. Code § 3426.1(d). In order to qualify as a trade secret, information must be valuable because it is unknown to others and . . . the owner [must have] attempted to keep [it] secret." *ABBA Rubber Co. v. Seaquist*, 235 Cal. App.

3d 1, 18 (1991). The information "must not be of public knowledge or of a general knowledge in the trade or business." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974).

  TAN's CUTSA claim must be dismissed because TAN has not pleaded the existence of trade secrets with sufficient specificity. *See* Cal. Civ. Code § 2019.210. To pass muster under Rule 8, plaintiffs raising claims under CUTSA must itemize the information claimed as a trade secret with reasonable particularity, *see Agency Solutions.com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011); *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 923 F. Supp. 1231, 1252 (N.D. Cal. 1995); *see also* Restatement (Third) of Unfair Competition § 39, comment (d) (plaintiff bringing a trade secrets claim bears the burden to define the information with "sufficient definiteness" for a court to determine whether a misappropriation in fact occurred), such that prior to engaging in costly discovery, defendants may distinguish them from "matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade," and "ascertain at least the boundaries within which the secret lies." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968).

  In its complaint, TAN describes two channels by which it shared information with Zillow: its webpages accessible only with a log-in and password; and communications via email, phone, and in-person discussion. It avers only in broad strokes, however, what pieces of information shared through each could constitute trade secrets,[3] offering not nearly enough detail to allow the Court to make the required "item-by-item determination" of what is and is not protectable under CUTSA. *See Agency Solutions.com*, 819 F. Supp. 2d at 1017; *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520-22 (9th Cir. 1993) (finding that while a particular customer database qualified as a trade secret, the generalized assertion of trade secrets in diagnostic

---

[3] In TAN's own words, the misappropriated trade secrets included "[a]mong other things, the manner in which [the Coming Soon] feature was developed and implemented, the strategy behind it, the operation of this feature, and the identity of which TAN member agents made listing posts on TAN's member-only web application." Compl. ¶ 58. Other "confidential and proprietary details" TAN avers it shared—without specifying which information in particular, if any, constitutes a trade secret—include TAN's "unique features, its membership model, and its business strategy." Compl. ¶ 25.

software and operating systems did not provide sufficient specificity).

Nor does TAN make factual averments demonstrating that the alleged trade secrets each meet the specifications set forth in section 3426.1(d). For instance, while TAN mentions that its members must both pass a screening process and agree to terms of service, it fails to describe how exactly these filters amount to a reasonable effort to maintain the secrecy of its web content. TAN moreover does not clearly demonstrate that all of the content Zillow allegedly misappropriated is "information" protectable under CUTSA, as opposed to non-protectable ideas, "features and functions of design and operation." *See Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 220-21 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 120 (2011) (trade secret laws do not protect "ideas," or "conceptual" data, but rather facts, or "empirical" data—"such as the customer's preferences, or the location of a mineral deposit"); *SocialApps, LLC v. Zynga, Inc.*, 2012 WL 381216, at *2, 5 (N.D. Cal. Feb. 6, 2012). It is far from clear that the "features" and "strategy" to which the complaint vaguely refers are comprised of empirical data, protectable under CUTSA, rather than ideas or functions, which are not.[4]

TAN's rejoinder that it must have shared trade secrets with Zillow because it otherwise would not have contemplated a NDA, needed to create a log-in and password for Zillow, or been questioned by Zillow's team about details of its "strategy, tools and features," is therefore futile. While Zillow may very well have learned valuable information in the course of its contact with TAN and TAN's website, TAN's failure to distinguish the allegedly shared trade secrets from non-trade secret information renders this claim defective.

C. Computer Fraud and Abuse Act (Claim 9)

---

[4] Although TAN does discretely pinpoint certain items of information—for example, the identity of which agents posted particular upcoming listings—that could constitute trade secrets, it does so only in passing with regard to certain items, and does not describe with specificity the economic value of such items or its efforts to keep them secret. And while the more loosely defined secrets—the "manner" in which its site displays upcoming listing information, for example— might include specific items, as discussed, TAN does not meet its burden to name them.

According to TAN, Zillow violated the CFAA by intentionally accessing TAN's private web pages without authorization or in a manner that "exceed[ed] authorized access." *See* 18 U.S.C. §§ 1030(a)(2)(C) and (a)(4). Because TAN's own factual averments are inconsistent with its assertion that Zillow's use of the log-in and password information provided by TAN exceeded authorization, TAN falls short of raising a cognizable claim under this statute.

A plaintiff may bring a civil action under the CFAA against anyone who intentionally accesses a computer[5] without authorization or exceeds authorized access, and thereby obtains information from the protected computer, *see* § 1030(a)(2)(C), or anyone who "knowingly and with intent to defraud" accesses a protected computer either without authorization or in a manner that exceeds authorized access, and "by means of such conduct furthers the intended fraud and obtains anything of value," except where the "object of the fraud and the thing obtained consists only of the use of the computer" and the value of the use does not exceed $5,000 within the span of one year, *see* § 1030(a)(4). Under the statute, "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." § 1030(e)(6). One who intentionally accesses a computer without authorization, by contrast, "has no rights, limited or otherwise," to do so. *Brekka*, 581 F.3d at 1133.

It is plain from TAN's factual averments that Zillow was not "without authorization" to access TAN's site. Faudman created an account for Schwartz and shared the log-in and password information with him precisely so that Schwartz could access TAN's members-only webpages on Zillow's behalf. Nor did Zillow exceed this authorization under the meaning put forth by the CFAA. That Zillow allegedly *used* information gleaned from TAN's password-protected webpages in a manner inconsistent with the parties' oral agreement does not, without more, demonstrate that Zillow exceeded its authority to *access* such pages. The Ninth Circuit squarely

---

[5] For purposes of the CFAA, "computer" may encompass a computer system or website. *See LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009).

rejected logic arguing otherwise in *LVRC Holdings, LLC v. Brekka*, where defendant former employee had emailed documents from a protected computer to himself and his wife before he left the plaintiff company, prompting the court to note that, "[n]o language in the CFAA supports [plaintiff's] argument that authorization to use a computer ceases when an employee resolves to use the computer contrary to the employer's interest." *LVRC*, 581 F.3d at 1133.  Just as Brekka was given a valid log-in and password to access and email company documents during the course of his employment, Zillow was granted an account to access TAN's password-protected webpages. Authorization depends on actions taken by the granter, not the accesser. *See id.*, 581 F.3 at 1135 ("'[A]uthorization' depends on actions taken by the employer.").  Nowhere does TAN aver that it forbade Zillow from accessing particular webpages or content on its site, or that it designed Zillow's log-in and password to allow only limited access.  TAN's allegations solely concern Zillow's alleged misuse of information, and are therefore insufficient to sustain a CFAA claim.

D.  Computer Data Access and Fraud Act (Claim 10)

Because TAN likewise fails to aver that Zillow accessed any particular webpages "without permission," TAN's CDAFA claim must also be dismissed.  Cal. Penal Code § 502(c).  According to the complaint, Zillow violated paragraphs (2), (3), (6) and (7) of Section 502(c) by "knowingly" and "without permission" (2) taking, copying, or using data or supporting documentation from a computer, system, or network; (3) using computer services; (6) providing or assisting with accessing a computer, system, or network; and (7) accessing or causing a computer, system, or network to be accessed. *Id.*; *Facebook, Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1036 (N.D. Cal. 2012) (accessing a network in a manner that circumvents technical or code-based barriers in place to restrict or bar a user's access qualifies as acting "without permission," while merely acting contrary to a website's terms of use does not).

Just as TAN has not shown that Zillow exceeded authorized access under the CFAA, it by the same token fails to aver that Zillow acted "without permission." *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010) ("[T]he necessary elements of Section

502 do not differ materially from the necessary elements of the CFAA."). Its CDAFA claim must therefore be dismissed.

### E. State-Law Claims Superseded by CUTSA (Claims 1, 2, 4, 5, 6, 11, and 12)

CUTSA contains a savings clause that "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.,* 171 Cal. App. 4th 939, 962 (2009); *see also* Cal. Civ. Code § 3426.74. The savings clause does not affect "contractual remedies" and civil remedies "that are not based upon misappropriation of a trade secret." *Silvaco Data Systems*, 184 Cal. App. 4th at 233 (2010). "The preemption inquiry for those causes of action not specifically exempted by § 3426.7(b) focuses on whether other claims are not more than a restatement of the same operative facts supporting trade secret misappropriation . . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Convolve, Inc. v. Compaq Comp. Corp.*, 2006 WL 839022, at *6 (S.D.N.Y. Mar.31, 2006) (internal quotations omitted) (applying California law). Because TAN's fraud,[6] negligent misrepresentation, misappropriation of ideas, breach of confidence, UCL, promissory estoppel, and unjust enrichment claims all arise from the same alleged conduct that lies at the heart of TAN's CUTSA claim, they are superseded and must be dismissed.

TAN's contention that these claims are sustained by the alleged misappropriation of non-trade secret proprietary information, independent from the allegations underpinning its CUTSA claim, is undercut by TAN's own complaint. Under its CUTSA claim, TAN avers "[a]mong other things, the manner in which this feature was developed and implemented, the strategy behind it, [its] operation . . . and the identity of which TAN member agents made listing posts on TAN's member-only web application, *were trade secrets*" improperly copied and used by Zillow in the development of its competing product. Compl. ¶ 58 (emphasis added).

The other various state-law claims at issue here aver misappropriation of substantially the

---

[6] Zillow also contends TAN's fraud claim is not pleaded with the specificity demanded by Rule 9. Because the claim is dismissed as superseded, however, that issue is not reached here.

ORDER GRANTING MOTION TO DISMISS
CASE NO. 14-cv-04769-RS
12

same information. *See* Compl. ¶ 40 (fraud claim alleging TAN was induced to provide "access to TAN's private web application and members-only emails, including Pre-MLS listings"); *id.* at ¶ 52 (mentioning the same information under TAN's negligent misrepresentation claim); *id.* at ¶¶ 68-69 (alleging under misappropriation of ideas claim that TAN relied on Zillow's false promise of confidentiality in sharing its "work product," the "exclusive online community for real estate agents" it created); *id.* at ¶ 73 (basing breach of confidence claim on improper use of "novel ideas regarding the creation of [an] . . . exclusive online community [for sharing ] information regarding pre-and non-MLS listings"); *id.* at ¶ 82 (premising UCL claim on averments of common-law fraud and misappropriation made elsewhere in the complaint); *id.* at ¶ 113 (alleging promissory estoppel based on disclosure of unspecified "confidential information"); and *id.* at 115 (incorporating previously set forth factual averments to support unjust enrichment claim).[7] TAN fails to offer any material distinction between the wrongdoing alleged in its CUTSA claim and the averments supporting these other state-law claims. It cannot, on the one hand, aver its exclusive web content and business strategy information shared in meetings comprise trade secrets, and on the other argue that the same information provides an independent basis to sustain non-trade secret claims.

Nor does TAN's further contention that the issue of whether CUTSA supersedes certain of its claims hinges on factual questions whose answers only discovery may illuminate, and thus would be premature to resolve on a motion to dismiss, work to preserve these claims. While a factual inquiry may well shed light on which, if any, confidential information referenced in TAN's complaint is and is not a trade secret, TAN has at this point only made vague references as to the nature of its purportedly non-trade-secret proprietary information. Rule 8 therefore compels a determination at this juncture. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Such reasonable inferences cannot be drawn from the face of the complaint to sustain TAN's superseded claims and allow them to proceed, as

---

[7] Additional grounds, addressed below, further compel dismissal of TAN's claims for negligent misrepresentation and unjust enrichment.

pleaded, to the discovery phase. Other courts faced with similar circumstances have resorted to this course of action. *See SunPower*, 2012 WL 6160472, at *14; *Heller v. Cepia*, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012).

Accordingly, TAN's claims for (1) fraud and deceit; (2) negligent misrepresentation; (4) misappropriation of ideas; (5) breach of confidence; (6) unfair competition under the UCL; (11) promissory estoppel; and (12) unjust enrichment, arise from the same nucleus of operative facts as TAN's CUTSA claim and must be dismissed. *See SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, *3 (N.D. Cal. Dec. 11, 2012) (aggregating cases that have adopted this "nucleus of facts" test to reach a similar result in analogous circumstances); *see also Language Line Services, Inc. v. Language Service Associates, Inc.*, 944 F. Supp. 2d 775, 780-81 (N.D. Cal. 2013) (adopting this approach to grant defendant partial summary judgment as to plaintiff's conversion claim).[8]

F. <u>Negligent Misrepresentation</u>

A viable California fraud claim must allege misrepresentation, concealment, or nondisclosure; knowledge of falsity; intent to defraud; justifiable reliance; and resulting damages. *See Engala v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997). The elements of negligent misrepresentation differ as to the required mental state, *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986) (Rather than acting with scienter, one must make a misrepresentation only "without reasonable grounds for believing it to be true."), but also in that a claim for negligent misrepresentation under California law must be based on a positive assertion of past or existing material fact, while a fraud claim, by contrast, may be based on omissions. *I–Enterprise Co. LLC*

---

[8] Even had TAN alleged facts suggesting these other state-law claims concern non-trade secret proprietary information distinct from that underlying its CUTSA claim, it is not clear that such claims based on a theory of misappropriation are viable, especially in the wake of CUTSA. *See Silvaco*, 184 Cal. App. 4th at 239 n. 22 ("[A] prime purpose of the law was to sweep away the adopting states' bewildering web of rules" and replace it with the act's definition of "trade secret," such that "[i]nformation that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen."). Tort claims based on a theory of *misrepresentation* that do not revolve around trade-secret information, may, by contrast, survive. *See First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 919 (N.D. Cal. 2008) (finding that CUTSA did not preempt fraud claim based on alleged false promise not to disclose plaintiff company's non-trade-secret confidential pricing and profit margin information).

*v. Draper Fisher Jurvetson Management Co. V, LLC*, 2005 WL 3590984, at *3, 21 (N.D. Cal. Dec. 30, 2005).

TAN avers Zillow made affirmative misrepresentations in the form of false promises to maintain the confidentiality of information TAN shared; to use it solely to evaluate an investment in TAN; and to execute a NDA, not with any intent to be bound, but rather purely to induce TAN's reliance. Because these are assertions of intentional false promises, Plaintiff may not allege the same conduct amounts to a negligent misrepresentation. *See Stevens v. JP Morgan Chase Bank, N.A.*, 2010 WL 329963, at *7 (N.D. Cal. Jan. 20, 2010) ("California law distinguishes between negligent misrepresentation, which is based on a statement of past or existing material fact, and fraud, which is based on an intentional false promise.... There is thus no cause of action in California for the so-called 'negligent false promise.' "). Thus, in addition to being superseded by CUTSA, TAN's negligent misrepresentation claim is entirely unsupported by the complaint's factual averments and must be dismissed.

G. Unjust Enrichment (Claim 12)

TAN's twelfth claim for relief adds to its previously set forth allegations only the conclusory statement that "Zillow was unjustly enriched at the expense of and to the detriment of TAN, or while TAN was unjustly deprived," and requests restitution. Compl. ¶ 116-17. California law does not uniformly recognize unjust enrichment as a cause of action; rather, courts typically consider it as a principle that gives rise to restitution in order to avoid permitting a defendant to benefit unjustly where no valid contract exists. *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004).

Restitution may be awarded either (1) in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective, or (2) where a defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in tort. *Id.; see also Paracor Fin. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir.1996). Thus, "a claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort." *Rosal v. First Federal Bank of America*, 671 F.

Supp. 2d 1111, 1133 (N.D. Cal. 2009). While it may be appropriate to plead unjust enrichment as an alternative to breach of contract in instances where the contract was allegedly obtained through fraud and is therefore unenforceable, *see McKinnon v. Dollar Thrifty Automotive Group, Inc.*, 2013 WL 791457, at *8 (N.D. Cal. Mar. 4, 2013), here, in addition to its breach of contract and unjust enrichment claims, TAN alleges several statutory and tort claims—all based on the same underlying conduct. Given that its cursorily-pleaded unjust enrichment theory rests on allegations covered by other claims that provide for legal remedies, this claim is superfluous and, accordingly, dismissed. *See In re Ford Tailgate Litigation*, 2014 WL 3899545, at *3-4 (N.D. Cal. Aug. 8, 2014).

### H. Breach of Implied Covenant of Good Faith and Fair Dealing (Claim 8)

TAN's claim for breach of the implied covenant of good faith and fair dealing must likewise be dismissed as redundant. An unwritten provision of every contract is that neither party will act to injure the right of the other to receive the benefits of the agreement. *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 8 (2000) (internal citations and quotation marks omitted). This implied term "imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (1990) (citations and quotations omitted). Thus, it protects only the parties' right to receive benefits as set forth in their agreement. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 698 n. 39 (1988). A claim for breach of the implied covenant of good faith and fair dealing is, therefore, not duplicative of a breach of contract claim when a plaintiff alleges that the defendant acted in bad faith to frustrate the purpose of the alleged contract—in a manner distinct from breaching its terms. *Davis v. Capitol Records, LLC*, 2013 WL 1701746 (N.D. Cal. 2013).

Under its seventh claim for breach of oral contract, TAN avers an "essential term" of its contract with Zillow was that "Zillow would keep all information provided by TAN confidential and that information would be used solely for the purpose of evaluating a potential investment in TAN." Compl. ¶ 87. By using the information for other purposes and failing to keep it secret,

says TAN, Zillow breached the agreement. Despite TAN's insistence that the grounds for each claim are distinct, its complaint plainly cites the same alleged conduct to support its claim for breach of the implied covenant of good faith and fair dealing. *See* Compl. ¶ 94 ("Zillow's acts and omissions—including its continued use of TAN's confidential information to create a competing product and its failure to disclose that it had never made the type of investment TAN was seeking—injured the rights of TAN . . . ."). TAN's eighth claim is therefore superfluous in light of its seventh and must be dismissed.

## I. Declaratory Relief (Claim 13)

TAN's final claim requests judgment pursuant to 28 U.S.C. § 2201, et seq., declaring that Zillow has no right to use TAN's confidential information and owes TAN damages for its wrongful conduct; and seeks to enjoin Zillow from operating its "Coming Soon" product. The Ninth Circuit has directed district courts faced with whether to entertain claims for declaratory relief to consider, among other factors, whether the claim will settle all aspects of the controversy or serve some other useful purpose. *See Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir.1998). Here, adjudication of TAN's various other statutory, tort and contract claims must necessarily involve deciding whether it is entitled to the relief it seeks under its thirteenth claim. Independent consideration of the questions TAN raises under the banner of its claim for declaratory relief would thus be purely duplicative; and its concern that dismissal of this claim at this stage will deprive TAN of a determination of its rights in the event its other claims do not survive, is therefore unfounded. TAN's claim for declaratory relief is, accordingly, dismissed.

## V. CONCLUSION

For the aforementioned reasons, Zillow's motion to dismiss all of TAN's claims save its seventh is hereby granted. TAN is afforded leave to amend, however, to the extent it can revise its complaint to aver with sufficient specificity what, if any, trade secrets Zillow misappropriated; incorporate allegations demonstrating either that it had some property interest in non-trade secret information that would sustain its non-CUTSA tort claims or that these claims are based on something other than the misappropriation of information of value, such that they are not

superseded; and eliminate duplicative or inconsistent claims. If it elects to file an amended complaint, TAN must do so within thirty (30) days of the date of this order.

**IT IS SO ORDERED**.

Dated: April 13, 2015

_____
RICHARD SEEBORG
United States District Judge