United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TOP AGENT NETWORK, INC.,
Plaintiff,

v.

ZILLOW, INC.,
Defendant.

Case No. 14-cv-04769-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND**

## I. INTRODUCTION

The parties in this matter are competitor online real estate information dissemination services. Defendant Zillow, Inc. allegedly defrauded plaintiff Top Agent Network, Inc. ("TAN") into divulging proprietary information about its "Upcoming Listings" feature, a product that organizes and disseminates information about off-market properties, and used this information in the development of its own rival feature. In its First Amended Complaint ("FAC"), TAN advances four claims for relief: (1) misappropriation of trade secrets; (2) fraud and deceit; (3) unfair competition; and (4) breach of oral contract, each of which Zillow now moves to dismiss. While TAN's trade secrets claim is sufficiently pleaded to advance at this juncture, that claim operates to supersede the fraud and deceit and unfair competition claims, thereby mandating their dismissal. Its breach of oral contract claim likewise survives Zillow's motion to dismiss.

## II. BACKGROUND[1]

The relevant facts predominantly mirror those set forth in the prior dismissal order and therefore will not be repeated here. TAN adds the following details to its initial averments by way of the FAC. It was on February 5, 2014, during the first of two phone calls between TAN's Chief Executive Officer David Faudman and Zillow's Chief Revenue Officer Greg Schwartz, that Faudman first shared confidential information about TAN, specifically its rationale for soliciting and targeting only the top ten percent of real estate agents to become its members. Schwartz followed up on their second call, held on February 19, 2014, with an email particularly requesting information on TAN's internal metrics, asking how TAN evaluates its business, its number of member agents, how TAN measures user engagement, how frequently members take various actions on the site, and "anything you have on pre-MLS listing volume." FAC ¶ 30, 31.

At the March 12, 2014 in-person meeting between the parties, TAN distributed printed slides containing specifics as to various types of metrics, statistics, and market research surveys employed by TAN in evaluating its business that comprised "trade secrets." *Id.* ¶ 32. TAN representatives furthermore answered questions arising from discussion of the slides, and provided additional details about the "tools, features and business strategy" underlying its pre-MLS "Upcoming Listings" feature. *Id.*

After Zillow ultimately declined to invest in TAN and launched its own competing pre-MLS "Coming Soon" product, TAN filed suit on October 27, 2014, alleging a host of statutory and common-law claims that were dismissed with leave to amend on April 13, 2015. Its May 12, 2015 FAC which followed is the subject of the present motion.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not

[1] The factual background herein is based on the averments in the FAC, which must be taken as true for purposes of a motion to dismiss.

required," a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

United States District Court
Northern District of California

## IV. DISCUSSION

A. Misappropriation of Trade Secrets (Claim 1)

California's Uniform Trade Secrets Act ("CUTSA") provides for the civil recovery of actual losses or other injuries caused by the misappropriation of a "trade secret" resulting in damages. Cal. Civ. Code §§ 3426-3426.1; *Nexsales Corp. v. Salebuild, Inc.*, 2012 WL 216260 at *2 (N.D. Cal. Jan. 24, 2012). "Trade secrets" encompass (1) information, including a formula, pattern, compilation, program, device, method, technique, or process, that (2) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who could obtain economic value from its disclosure or use; and (3) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ. Code § 3426.1(d). "Misappropriation," in relevant part, may constitute the acquisition of a trade secret through improper means; or the non-consensual disclosure or use of another's trade secret acquired either through improper means or under circumstances giving rise to a duty to maintain its secrecy or limit its use. *Id.* § 3426.1(b)(1), (2). "Improper means" in this context include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *See* Cal. Civil Code § 3426.1(a). According to Zillow, TAN's CUTSA claim necessarily fails in that it falls short of sufficiently alleging TAN's possession of misappropriated trade secrets; an act of misappropriation on Zillow's part; and injury flowing therefrom.

a. *Trade Secrets*

The FAC differs markedly from TAN's initial complaint in that it enumerates particular pieces of information it claims comprise actionable trade secrets. As noted in the prior order, Rule 8 demands that CUTSA claims itemize information claimed as trade secrets with reasonable particularity, *see Agency Solutions.com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011); *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 923 F. Supp. 1231, 1252 (N.D. Cal. 1995); see also Restatement (Third) of Unfair Competition § 39, comment (d) (plaintiff bringing a trade secrets claim bears the burden to define the information

with "sufficient definiteness" for a court to determine whether a misappropriation in fact occurred), such that prior to engaging in costly discovery, defendants may distinguish them from "matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade," and "ascertain at least the boundaries within which the secret lies." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968).

The FAC bases TAN's CUTSA claim on information TAN shared with Zillow in slides distributed at the March 12, 2014 meeting, which specifically included internal metrics concerning client engagement, market penetration, members' use of information on TAN's private web pages, and the size of its homebuyer secondary market; the frequency with which members in different markets open their emails; the percentage of home sales made by TAN member agents in three geographic areas and member statistics from those markets; and market research survey results indicating how clients specifically use TAN in advancing their businesses. *See* FAC ¶¶ 32, 51. This data was available only to "select TAN employees, all of whom executed employment agreements with confidentiality provisions," TAN avers, and bears economic value in that it helps TAN "secure its clients' business, retain their membership, refine its private members-only portal, and adapt its approach to new chapters." *See* FAC ¶¶ 33-34. It thus appears that TAN pleads with requisite specificity its possession of information protectable under CUTSA. *See Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 220-21 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 120 (2011) (trade secret laws do not protect "ideas," or "conceptual" data, but rather facts, or "empirical" data—"such as the customer's preferences, or the location of a mineral deposit").

b. *Misappropriation*

Where the parties clash, however, is whether TAN sufficiently demonstrates misappropriation of the information described above. Zillow raises the legitimate concern that on its face, this claim falls victim to a disconnect between TAN's alleged trade secrets—metrics and market data—and the purportedly manifest resemblance between the features, design, and contents of parties' competing products. FAC ¶ 43 (enumerating alleged similarities, for instance that

"both present listings 30 days pre-MLS, indicate how many days since the listing was posted by the agent," and in a "stark departure from Zillow's previous business model," do "not contain other agent advertising" next to listings). The link is, indeed, tenuous at best. Further, as noted in the prior order, such concepts, strategies, features, and functions usually do not fall within CUTSA's ambit and thus do not themselves constitute trade secrets. It is also not clear from TAN's averments that the company even aims to keep the information that appears on its "Upcoming Listings" web pages confidential. Though TAN member agents must consent to keep their account log-ins secret, they are, no doubt, encouraged to share listings and other site content with their homebuyer clients. The present inquiry is therefore limited to whether, according to the FAC, Zillow misappropriated the above-cited metrics, market research, statistics, and survey results.

In an albeit somewhat conclusory fashion, the FAC does aver "use" of these metrics and market data trade secrets. While TAN's allegations fall short of chronicling in precisely what manner such data proved integral to the development of Zillow's competing "Upcoming Listings" product, to impose such a steep hurdle prior to discovery would be inappropriate. *See Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, 2015 WL 2265479, *5 (N.D. Cal. May 13, 2015). TAN alleges that its internal metrics and market data offered Zillow benchmarks for quickly creating a look-alike product while facing comparatively less risk. The information furthermore allowed Zillow to "more effectively target its sales efforts toward TAN's customers—the top-performing real estate agents in various markets with a large number of housing sales and home-buying clients." FAC ¶ 42. These allegations thus suffice to sustain a claim for "use" at this juncture.

TAN also demonstrates the requisite acquisition by improper means. Zillow argues the FAC fails to tether its allegedly fraudulent assurances of confidentiality specifically to TAN's decision to share its internal metrics and market data. A reading of the complaint as a whole, however, suggests otherwise. TAN repeatedly asserts that but for Zillow's false assurances that it would use the information only for purposes of assessing an investment in TAN, it would not have divulged *any* information—including the alleged trade-secret data, as well as its business

United States District Court
Northern District of California

strategies and private web pages. Zillow's reliance on *Be In, Inc. v. YouTube, LLC* 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) in support of its argument here is misplaced. *Be In* declined to find acquisition by improper means or breach of duty simply because the complaint's only allegations of actionable conduct appeared in two conclusory sentences, bereft of any details as to the defendant's "improper means." Here, by contrast, TAN offers specific facts as to the false statements Zillow allegedly made, to whom, when, and where, and how they operate to induce Zillow into sharing its internal data. While TAN also argues that, in making such promises, Zillow undertook and breached a duty of confidentiality to TAN, this question need not be reached here.

Zillow's argument that the FAC fails to mount a sufficient showing of damages proximately caused by the purported misappropriation is, in addition, without merit. While later crossroads in this case will no doubt demand of TAN a more particularized showing of damages, its present allegations that it "suffer[ed] significant harm, both financially and to its goodwill and reputation," while Zillow enjoyed a surge in stock price and market value "due in large part to the launch of [its competing] product," are not so vague that this claim should fail to advance. *See Mintel Learning Technology, Inc. v. Ambo Education Holding Ltd.*, 2012 WL 762126, at *3 (N.D. Cal. Mar. 8, 2012) (permitting allegations of "lost profits" and "unjust enrichment" due to defendants' misappropriation no more specific than those made here to satisfy damages element of CUTSA); *FAS Technologies, Ltd. v. Dainippon Screen Manufacturing Co., Ltd.*, 2001 WL 637451, at *3 (N.D. Cal. May 31, 2001) (accepting averments of actual damages or unjust enrichment to sustain a trade secrets claim).

B. Fraud and Deceit and Unfair Competition Claims (Claims 2 and 3)

As in its initial complaint, TAN unsuccessfully attempts to aver within the interstices of trade secrets law additional state-law claims arising from the same alleged fraud. According to TAN, Zillow purposefully misrepresented its intentions and omitted material information as part of a campaign to obtain confidential information from TAN that is distinct from TAN's trade secrets. This common law fraud, TAN further argues, gives rise to an additional claim under

California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., for unfair and unlawful competition.

While artful, TAN's allegations of fraud and unfair and unlawful competition are superseded by CUTSA. That statute contains a savings clause that "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (2009); Cal. Civ. Code § 3426.74. The savings clause does not affect "contractual remedies" and civil remedies "that are not based upon misappropriation of a trade secret." *Silvaco Data Systems*, 184 Cal. App. 4th at 220-21. "The preemption inquiry for those causes of action not specifically exempted by § 3426.7(b) focuses on whether other claims are not more than a restatement of the same operative facts supporting trade secret misappropriation . . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Convolve, Inc. v. Compaq Comp. Corp.*, 2006 WL 839022, at *6 (S.D.N.Y. Mar.31, 2006) (internal quotations omitted) (applying California law).

Favorably construed, TAN's fraud allegations could be read to concern non-trade secret information that is indeed distinct from the metrics and market data underpinning its CUTSA claim. The FAC attempts to cabin these claims to non-trade secret "confidential information" derived from TAN's "private web application, member-only emails, information regarding TAN's most active members in San Francisco, and data regarding the San Francisco zip codes with the most non-public listings," which Zillow gathered using the log-in account Faudman created for Schwartz. FAC ¶ 66. TAN's CUTSA allegations, by contrast, focus on the metrics and market data printed on slides shared during the parties' in-person meeting. Yet this ostensible distinction between the claims is belied by the fact that they arise from the same allegedly wrongful conduct—Zillow's false assurances—and thus a common nucleus of fact.

Were it able to premise its fraud claim on a basis distinguishable from its CUTSA claim, however, TAN would falter before a different obstacle. A fraud claim based on non-trade secret confidential information fails absent a showing that the information is actionable property under

some non-CUTSA provision of positive law. *See Silvaco*, 184 Cal. App. 4th at 239 n. 22 ("[A] prime purpose of [CUTSA] was to sweep away the adopting states' bewildering web of rules" and replace it with the act's definition of "trade secret," such that "[i]nformation that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen."). Here, TAN avers it suffered injury due to Zillow's alleged misrepresentations and omissions precisely because the emails and listings on its private web pages are otherwise "only available to certain TAN member agents, all of whom must agree to TAN's terms of service with confidentiality provisions." FAC ¶ 66. TAN cannot raise a fraud claim sounding in conversion or breach of confidentiality separate from its CUTSA claim merely because information on its web pages does not meet CUTSA's definition of a "trade secret." Permitting it to do so would allow TAN to opt for alternate pleading requirements with less burdensome standards of proof, entirely undermining CUTSA's preclusive effect. *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012) ("If the alleged property right is in essence that the information is not generally known to the public, then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret," as "[t]o permit otherwise would allow plaintiffs to avoid the preclusive effect of CUTSA.") (internal citations omitted).

Caught between Scylla and Charybdis, TAN's fraud claim for the second time fails to navigate trade secret law's narrow straits. There exists, therefore, no predicate act on which TAN may base its UCL claim, and both claims are dismissed without further leave to amend.

C. Breach of Oral Contract (Claim 4)

Under California law, a cognizable contract requires (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. Cal. Civ. Code § 1550. Valid consideration includes "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor." *Id.* § 1605. The terms of an

enforceable contract "must be definite enough that a court can determine both the scope of the duties and the limits of performance involved in the contract, such that it has a rational basis for assessing damages." *Trew v. Intl. Game Fish Ass'n, Inc.*, 404 F. Supp. 2d 1173, 1178 (N.D. Cal. 2005).

Here, TAN alleges Faudman and Schwartz "entered into an oral contract in or around late January/early February 2014," and that "an essential term of this contract was that Zillow would keep all information provided by TAN confidential and [such] information would be used solely for the purpose of evaluating a potential investment in TAN." FAC ¶ 77. TAN conceivably relied on these promises as bargained-for consideration, in exchange for which it extended Zillow an investment opportunity and shared its internal metrics, market research, and password-protected website access. While the FAC could certainly have spelled out these terms in a more explicit fashion, they suffice to sustain TAN's breach of oral contract claim at this juncture.

## V. CONCLUSION

For the aforementioned reasons, TAN's CUTSA and breach of oral contract claims may advance. Its fraud and deceit and UCL claims are dismissed without further leave to amend.

**IT IS SO ORDERED**.

Dated: August 6, 2015

RICHARD SEEBORG
United States District Judge